Samuel M. Gold, J.
This is a motion by an assignee for the benefit of creditors of Mincow Bag Co., Inc. (hereinafter referred to as “ Mincow ”) to compel Finale, Inc., to turn over to the assignee any merchandise in its possession which it had previously consigned to Mincow and the proceeds received by Finale from the sale of ladies’ handbags which had been consigned by Finale, Inc. to Mincow. Finale cross-moves to compel remittance to it (1) of the proceeds derived by Mincow from the sale of gloves consigned by Finale to Mincow and (2) of any goods in the assignee’s possession which had been so consigned.
In October, 1964, Mincow and Finale entered into a written contract, by the terms of which Finale agreed to deliver to specified chain and department stores throughout the country *600 such merchandise as Finale might see fit, for sale in those stores for the account of Mincow, as Finale’s consignee. Title to the merchandise and the proceeds thereof were to be “ always vested in Finale ” and such merchandise was to be “ at all times subject to and under the direction and control of Finale ’ ’. Finale was to determine the resale price of the merchandise and to ‘ ‘ bear all risk of loss ” or damage from any cause whatever, and it agreed to keep the merchandise insured in its own name and for its own benefit, in companies chosen by it, at its own cost and expense. The stores were to remit the sales proceeds to Mincow within 120 days after the sale of the merchandise. In the event of a failure to remit, Mincow was to institute such legal collection proceedings as Finale might determine, such proceedings to be at Finale’s expense and to be conducted by Finale’s counsel. Mincow agreed to remit to Finale 72% of the gross proceeds of the sales of the consigned merchandise.
The assignee for the benefit of creditors claims that he is entitled to prevail over Finale by reason of the provisions of the Uniform Commercial Code, which became the law of this State in September, 1964. He relies on sections 9-102 and 2-326 of the code.
Although Finale coneededly failed to comply with the filing and other requirements of article 9 of the code, it was not required to do so by the provisions of that article unless the consignment transactions between Finale and Mincow were “ intended as security ” (§ 9-102). Since Mincow was in no event to be liable to Finale unless the merchandise was sold by the chain stores, and then only after the sales had been made, it is clear that the consignments were not ‘ ‘ intended as security ’ ’ within the meaning of section 9-102. As stated in Professor Kripke’s 1 ‘ Practice Commentary” to Uniform Commercial Code, under section 9-102: “A true consignment # * * in
which there is no obligation to pay for the goods unless they are sold, is not subject to this article except as provided in U.C.C. § 2-326 ”.
The applicability of section 2-326 remains to be considered. That section, by its terms, is applicable only ‘ ‘ where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery ’ ’. If the merchandise involved in the present controversy had been delivered to Mincow and sold at Mincow’s place of business, creditors of Mincow would be entitled to prevail, unless one of the three exceptions specified in subdivision (3) of section 2-236 applied. That is not, however, the situation here. The mer *601 ehandise was delivered to chain stores throughout the country, in which the sales of the merchandise were made by employees of the stores (this statement in Finale’s brief is not denied). In the court’s opinion, these sales were not made at a place of business maintained by Mincow within the meaning of section 2-326, nor were they made by Mincow. On the contrary, the sales were made by the department stores at the places of business maintained by them. The provisions of section 2-326 might be applicable if the controversy were between Finale and an assignee for the benefit of creditors of any of the department stores. They do not, however, avail the assignee for the benefit of Mincow’s creditors. The section was intended to cover a situation where the possession and offering for sale of another’s merchandise presumably led to extensions of credit in the belief that the merchandise was owned by the possessor. No such extensions of credit to Mincow can reasonably be presumed to have resulted, however, from the possession and sale of Finale’s merchandise by chain stores scattered throughout the country. The department stores which possessed and sold Finale’s consigned merchandise were no more places of business “ maintained ” by Mincow than they were places of business “ maintained ” by Finale.
The case of General Elec. Co. v. Pettingell Supply Co. (347 Mass. 631) has no application here. In that case, the consigned merchandise was physically delivered to and in the possession of Pettingell Supply Co., which offered it for sale. The assignee for the benefit of Pettingell’s creditors brought suit to replevy the merchandise from Pettingell’s possession. The case did not involve a situation such as that presented here, for Pettingell clearly maintained a place of business where it dealt in merchandise “ of the kind involved ”, which had been physically delivered to it. The motion is denied and the cross motion granted.