IN RE PHOTO MART, INC.

(No. B69-2405—Decided September 22, 1969.)

United States District Court, Northern District of Ohio, Eastern Division.

WHITE, Referee. On May 19, 1969, the debtor filed an arrangement proceeding under Chapter XI of the Bankruptcy Act.

On June 25, 1969, M. H. Fogel & Co., filed a proof of claim alleging that there is due them the sum of $17,300, in-

dicating that said debt is secured. On July 14, 1969, the debtor-in-possession filed an objection to the claim of M. H. Fogel & Co., alleging that if they have a security agreement a determination is needed as to the amount of security held by them against the debtor-in-possession and the debtor further objected to the claim as being secured, alleging they failed to comply with the lien laws of the state of Ohio as required by the Uniform Commercial Code to perfect their lien.

On July 17, 1969, exceptions to the objections were filed by the M. H. Fogel & Co. and the matter was duly set down for hearing and was heard on July 30, 1969.

FINDINGS OF FACT

1. M. H. Fogel & Co. of Pittsburgh, Pennsylvania, entered into an agreement, being Photo Mart's Exhibit 1, dated January 18, 1965. Said agreement was for a period of six months. The court further finds that by memorandum, dated July 18, 1965, said agreement was extended for a period of sixty days and on September 18, 1965, by memorandum agreement, said agreement was extended for a period of one year.

The court further finds that on September 18, 1966, by memorandum agreement, said agreement was extended until terminated by either party upon sixty days' notice. The copies of the memorandum are attached to Photo Mart's Exhibit No. 1.

2. Photo Mart, Inc. has had only one place of business in Summit County and the state of Ohio. On September 2, 1966, the security agreement, being Photo Mart's Exhibit No. 1, was recorded only with the Secretary of State of Ohio, being No. B64527. Therefore, by agreement of counsel for the creditor and the debtor, it is acknowledged that said creditor failed to comply with the recording laws of the state of Ohio as required under the Uniform Commercial Code, Sections 1309.01 to 1309.50, inclusive, Revised Code.

3. The court finds that in the period of January 1, 1965, to October 1, 1967, a Photo Mart, Inc., special account was established in which Max Schwartz, on behalf of Photo Mart, Inc., did deposit seventy-five per cent of

the daily receipts as required by paragraph 12 of Exhibit 1 and that in compliance with paragraph 15 of Exhibit 1 payment was made out of this account by M. H. Fogel & Co., it being the only person authorized to issue checks on the special account.

4. The court finds from the evidence that some of the major trade creditors were aware of the arrangements between Photo Mart, Inc., and M. H. Fogel & Co. for the purchase and payment of merchandise.

5. The creditors who were aware of this arrangement between the debtor and M. H. Fogel & Co. were only those creditors who furnished merchandise for resale only and all the other creditors dealing with the debtor were not aware of this agreement.

6. M. H. Fogel & Co. knew of the sale of the capital stock of the debtor in September of 1967 and that the agreement was terminated on or about October 1, 1967, and M. H. Fogel & Co. did have knowledge after the said date that the debtor was making purchases from other trade creditors. It was agreed between the parties in October 1967, that the debtor would execute a series of notes to liquidate the balance due; or in the alternative, return the merchandise.

7. On October 31, 1967, the Photo Mart, Inc., special account was closed out by a payment to M. H. Fogel & Co. of $186.82, being the balance of the account.

8. The court finds from the testimony that the notes were never issued nor was the inventory returned subsequent to October 1967.

9. Photo Mart made several payments and purchased on open account from the M. H. Fogel & Co. after termination of the agreement as set forth in Photo Mart's Exhibit No. 2.

10. The court further finds that payments made by the debtor were applied to the general account and there was no specific allocation of payments to any particular shipment or invoice by the creditor.

11. The last purchase made by Photo Mart from M. H. Fogel & Co. was on February 2, 1968.

12. The creditors who sold to Photo Mart after Oc-

tober 1, 1967, were aware of the termination of the agreement, Exhibit No. 2, between the debtor and M. H. Fogel & Co.

13. The inventory of the debtor, Photo Mart Exhibit No. 2, did contain some of the merchandise shipped to the debtor by M. H. Fogel, but a large percentage had been sold and was restocked items purchased from other creditors.

14. The Chapter XI proceeding was filed on May 19, 1969 and this court enjoined the sheriff of Summit County from selling the bankrupt's property based on a judgment obtained by M. H. Fogel & Co. in the Common Pleas Court of Summit County within the four-month period of the filing under Chapter XI.

QUESTION

The issue for consideration is whether M H. Fogel & Co. has a valid consignment and a right for the return of the merchandise as provided for under Section 1302.39 (C), Revised Code (UCC 2-326).

LAW

The parties to this action have agreed under paragraph 2 of the finding of fact that the debtor-in-possession had ony one place of business in Summit County and in the state of Ohio and that the creditor, although recording the security agreement, recorded it only with the Secretary of State of Ohio. Therefore, the agreement was not properly filed as required by Sections 1309.38 and 1309.40, Revised Code. Therefore, the creditor bases its lien rights on the property in question under Section 1302.39, Revised Code, as found in the sales chapter of the Uniform Commercial Code.

It is agreed by the parties that this was a return of sale of merchandise that was primarily delivered for the purposes of resale and the only way for the creditor to retain his security interest in the property is to show under Section 1302.39 (C) (2), Revised Code, that he was entitled to claim an interest in the property by establishing "that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others." Therefore, the burden is upon the

consignor to prove that he has complied with these provisions of the Ohio Revised Code, or the merchandise in question is subject to the rights of other creditors. *Sussen Rubber Co.* v. *Hertz,* 19 Ohio App. 2d 1.

It is clear that the parties do not disagree that as of the filing of the Chapter XI arrangement proceeding most of the merchandise which had been delivered on consignment had been sold and had been replaced by other merchandise purchased by different suppliers after the termination of the agreement. Further, after the termination of this agreement, no further steps were taken by the M. H. Fogel & Co. to protect their interests in the property in question, with the exception that a law suit was filed, judgment was taken and at the time of the debtor's filing of the arrangement proceedings the sheriff was about to sell said property.

Since the termination of the agreement the evidence clearly showed that the merchandise was sold to the debtor on open account and the debtor was then billed and a statement rendered for the entire account due and several payments were made on said account.

It is clear from the evidence that thereafter on October 1, 1967, when the agreement was terminated, all creditors were aware of the termination of the agreement, that merchandise was sold to the debtor, and that all payments were made by the debtor.

Therefore, it is evident to this court that the creditor, M. H. Fogel & Co., never did exercise its right of having the merchandise returned and they now allege they have this right at this time. Therefore, those dealing with the debtor after October 1, 1967, had the right to assume that the goods displayed by the debtor were the property of the debtor.

By Photo Mart, Inc.'s being in possession of the merchandise, creditors having been notified of the termination of the agreement by M. H. Fogel & Co., had the right to assume that the debtor had title to the merchandise in the store. See *General Electric Co.* v. *Pettingell Supply Co.,* (Mass.), 199 N. E. 2d 326; *In re Mincow Bag Co.,* 53 Misc. 2d 599, 279 N. Y. S. 2d 306.

Under Section 346 of the Bankruptcy Act the debtor-in-possession exercises all the powers of a Trustee in Bankruptcy; therefore, he has the right to bring actions to void liens as the trustee may do under Section 70(E) of the Bankruptcy Act. Collier on Bankruptcy, 14 ed., Vol. 4A, Subsection 70.69 (3); Vol. 8, Subsection 6.32 (7.27, page 975).

This problem which has arisen between the debtor-in-possession and the creditor is substantially discussed in Boston College Industrial and Commercial Law Review, Vol. 9, No. 1, Fall 1967, page 62-71 by John Hicinbothem, in which he indicates there is a possible solution to the problem by the consignor properly filing the security agreement as provided for by Section 1302.39 (C) (3), Revised Code, or in the alternative, to comply with the combined Section 1302.39 (C) (1) and (2), Revised Code. But the creditor in this case has failed to comply with the latter section of the Code and there has been a defective filing as admitted in paragraph 2 of the finding of fact.

CONCLUSION

Therefore, this court concludes that the M. H. Fogel & Co. has a general unsecured claim in this estate in the amount as filed and the trustee does not dispute the amount. M. H. Fogel & Co. should share in the dividends of the estate as a general creditor as provided. The court did take into consideration concerning the confirmation of the plan that for purposes of confirmation of the plan, the court would have to assume that the claim was unsecured to make a determination as to whether the debtor had secured a sufficient number of acceptances of the plan in number and amount.

Therefore, it is ordered that the M. H. Fogel & Co. is hereby denied its lien and the claim is to be allowed as a general unsecured claim in the estate to share in the dividends of the estate as provided for by the plan of arrangement which was accepted by the general creditors.

*Judgment accordingly.*