In re CHIMNEYS, CHIMES 'N CHAIRS, INC. fdba Medina Fireplace, Inc., Debtor.

WONDER INDUSTRIES, Plaintiff,

v.

CHIMNEYS, CHIMES 'N CHAIRS, INC. fdba Medina Fireplace, Inc. and The Old Phoenix National Bank, Defendants.

Bankruptcy No. 581-1109.

United States Bankruptcy Court, N. D. Ohio.

Feb. 22, 1982.

John W. Ergazos, Canton, Ohio, for plaintiff.

David N. Brown, Median, Ohio, for Old Phoenix Nat. Bank.

John Guy, Akron, Ohio, for debtor.

Marc Gertz, Akron, Ohio, trustee.

## FINDING AS TO COMPLAINT OF WONDER INDUSTRIES

H. F. WHITE, Bankruptcy Judge.

This action was commenced by the filing of a Complaint by Wonder Industries against Chimneys, Chimes 'N Chairs, Inc.

and The Old Phoenix National Bank on October 21, 1981. In its complaint, Plaintiff seeks to have it determined that merchandise delivered to Defendant-Debtor, Chimneys, Chimes 'N Chairs, Inc. (hereinafter referred to as Debtor) was Plaintiff's property; that Plaintiff should be paid monies due it from the monies received through the sale of said property and that Plaintiff's claim against the sold merchandise is superior to any claim held by Defendant, The Old Phoenix National Bank.

A Stipulation of Facts was submitted by the parties hereto on January 12, 1982. It was agreed in said Stipulation that this action could be decided on the basis of the pleadings and the Stipulation of Facts.

### FACTS

The facts, based on the Stipulation of Facts and supporting documents submitted by the parties, are as follows:

1. The debtor filed its petition for reorganization under Chapter 11 of the Bankruptcy Code on July 2, 1981.

2. The Old Phoenix National Bank is the holder of a perfected secured claim on property of the debtor including inventory, office equipment, furnishings, fixtures, trade name and trademarks, lease rights, and accounts receivable. Copies of the financing statements are attached to the stipulations of facts as Exhibits C–1 and C–2 and incorporated by reference within the stipulations of facts. These were filed with the Secretary of State and the Medina County Recorder as required by law. Further, as of November 16, 1981, there was due The Old Phoenix National Bank the approximate sum of $144,450.00 on its secured claim.

3. On September 29, 1981, a hearing was held in this Court that authorized a sale of all of the personal property of the debtor to Frebar, Inc. and the purchase price amounted to $180,075.18. Payment of the purchase price called for Frebar, Inc. to assume the balance on the existing lien claims of The Old Phoenix National Bank and to pay $25,000.00 in cash to this estate.

4. On November 16, 1981, an order was entered authorizing the sale of the personal property of the debtor to Frebar, Inc. in accordance with the terms and conditions outlined in the order. Additionally, the claim of Wonder Industries was transferred to the $25,000.00 fund received by the debtor.

5. Wonder Industries is a creditor of the debtor that is owed the sum of $27,417.08 representing purchases made by the debtor from Wonder Industries in October of 1980.

6. A letter dated October 28, 1980 and attached to the Stipulation of Facts as Exhibit A and incorporated therein by reference from Wonder Industries to the debtor described the terms and conditions of the sale of merchandise to the debtor. Said letter requests that debtor sign a Warehouse Security Agreement enclosed with the letter. This security agreement has not been produced by the Plaintiff and this Court is unaware as to whether or not said Security Agreement was in fact signed by Debtor.

7. The sale to the debtor of merchandise by Wonder Industries is claimed to be a sale on consignment.

8. Wonder Industries delivered the merchandise to the debtor for the purpose of resale and the debtor was obligated to take an inventory on the last day of each month and mail a check to Wonder Industries for merchandise sold during the prior month.

9. The debtor complied with the terms of the agreement with Wonder Industries for a few months after receiving possession of the merchandise and paid for that portion of the merchandise the debtor had sold at its retail outlets. Further, the debtor subsequently defaulted on the reporting requirements and was in default of the terms and conditions of the letter of October 28, 1980 at the time that the petition was filed on July 2, 1981. No evidence has been submitted that Wonder Industries sought to enforce the terms of its agreement with the debtor.

10. No other restrictions were placed upon the debtor concerning its dealings

with the merchandise delivered by Wonder Industries other than those outlined in the letter from Wonder Industries dated October 28, 1980.

11. Wonder Industries never filed with the Secretary of State's Office of the State of Ohio, nor the Medina County Recorder's Office any type of financing statement, or Memorandum of Consignment.

12. The bankruptcy proceedings filed by Chimneys, Chimes 'N Chairs, Inc. was converted from a Chapter 11 proceeding to a Chapter 7 on December 14, 1981. Marc Gertz was appointed Interim Trustee.

### ISSUE

The sole issue presented this Court is whether the security interest of The Old Phoenix National Bank and the rights of the trustee in lien avoidance are superior to any interest held by Wonder Industries.

### LAW

Plaintiff argues, in its case, that as a consignor of Debtor, Chimneys, Chimes 'N Chairs, Inc., it had an interest in merchandise on consignment with the debtor superior to the interest held by Defendant, The Old Phoenix National Bank (hereinafter referred to as "Bank"). It has been stipulated between the parties that the Bank holds a valid security interest in certain of Debtor's property. As the property in question has been sold pursuant to an order of this Court, Plaintiff claims an interest in the funds from the said sale. The resolution of this dispute requires this Court to look to various provisions of the Uniform Commercial Code as set forth in Title 13 of the Ohio Revised Code.

Ohio Revised Code Section 1302.39(C) provides that:

(C) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return. The provisions of this division are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' However, this division is not applicable if the person making delivery:

(1) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(3) complies with the filing provisions of sections 1309.01 to 1309.50, inclusive, of the Revised Code.

As set forth, failure to comply with one of the three alternatives set forth in Ohio Revised Code Section 1302.39(C) results in the goods being deemed to be on sale or return. Subsection (B) of this same Code section states the effect of such a classification as being "... goods held on approval are not subject to the claims of the buyer's creditors until acceptance; *goods held on sale or return are subject to such claims while in the buyer's possession.*" (Emphasis added).

The Editor's Analysis to this section points out the importance to a consignor-creditor of complying with one of the three methods set out in Subsection (C). It is therein stated that:

Revised Code § 1302.39 cross-references importantly with RC Chapter 1309. [UCC art. 9] on secured transactions. Unless one of the conditions in RC § 1302.39(C) [UCC 2–326] is fulfilled, the owner of goods on consignment has little protection against other creditors of the consignee or the bankruptcy trustee who takes the consignee's estate. Since conditions in RC § 1302.39(C)(1) and (2) are impractical, the best protection for the consignor besides vigilance is to create a security interest in goods consigned. RC § 1302.39 must be read with RC § 1309.-11.1 [UCC 9–114] on consignment.

In the instant case, Wonder Industries delivered goods to debtor for sale and debtor maintained a place of business where it dealt in goods of the kind. Accordingly, Ohio Revised Code section 1302.39(C) applies herein. In accordance with the analysis provided by this section and the corresponding section in Article 9 (Ohio Revised Code Section 1309.11.1), it is doubly important for Plaintiff herein that it be found that one of the three alternatives set forth in Subsection (C) was satisfied by it. Unless it is so found, superior rights to the funds in question will be held not only by the Bank but also by the Interim Trustee in Bankruptcy.

Unless one of the three methods set forth in Subsection (C) is satisfied by the consignor, then the goods on consignment will be subject to the security interest of the consignor's creditor. *King's Appliance & Electronics, Inc. v. Citizens & Southern Bank of Dublin,* 157 Ga.App. 857, 278 S.E.2d 733, 30 UCC Rep.Serv. 1738 (C.A.Ga.1981); *In Re Bildisco,* 11 B.R. 1019, 31 UCC Rep.Serv. 875 (Bkrtcy.D.N.J.1981). Thus, it must be determined whether any of the three steps set forth in the statute in question have been met by Plaintiff, Wonder Industries.

■ In so doing, "the burden is upon the consignor to prove that he has complied with these provisions of the Ohio Revised Code, or the merchandise in question is subject to the rights of other creditors." *In Re Photo Mart, Inc.,* 22 Ohio Misc. 109, 51 Ohio Op.2d 203 (N.D.Ohio 1969), citing *Sussen*

*Rubber Co. v. Hertz,* 19 Ohio App.2d 1, 249 N.E.2d 65, 48 Ohio Op.2d 12 (C.A.Cuyahoga 1969).

■ No evidence has been submitted to this Court which would show that either Subsection (C)(1) or (C)(2) was satisfied. No sign was posted on debtor's premises to the effect that consigned goods were being sold on the premises nor has it been shown, or attempted to be shown, that the debtor is generally known by his creditors to be substantially engaged in the sale of goods of others. None of the stipulations submitted herein point to either of these two being true. Other than the pleadings and stipulations, no evidence has been supplied this Court which would allow this Court to find that either of these two alternatives had been satisfied.

In order to satisfy (C)(3), the filing provisions of Chapter 1309 of the Revised Code must be met. That chapter requires a party to file a financing statement with either the Office of the Secretary of the State of Ohio or the Office of the Recorder for the appropriate county or both. Additionally, where the consignment in question does not give rise to a security interest, the consignor must comply with the requirements of Section 1309.11.1 in order to have priority over a "secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee..."[1]

---

1. Ohio Revised Code Section 1309.11.1, in its entirety, provides that:

(A) A person who delivers goods under a consignment which is not a security interest and who would be required to file under sections 1309.01 to 1309.50 of the Revised Code by division (C)(3) of section 1302.39 of the Revised Code has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee, and also has priority with respect to identifiable cash proceeds received on or before delivery of the goods to a buyer, if:

(1) The consignee complies with the filing provision of division (C)(3) of section 1302.39 of the Revised Code with respect to consign-

ments before the consignee receives possession of the goods; and

(2) The consignor gives notification in writing to the holder of a security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor; and

(3) The holder of the security interest receives the notification within five years before the consignee receives possession of the goods; and

(4) The notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

(B) In the case of a consignment which is not a security interest and in which the requirements of division (A) of this section have not been met, a person who delivers goods to

In the case at bar, Plaintiff has stipulated that no financing statements were filed with either the Secretary of State's Office or the Medina County Recorder's Office. As such, no compliance has been had with Ohio Revised Code Section 1302.39(C) and Subsection B of that same section applies so as to make the transfer of goods from Plaintiff to Debtor a sale or return and thereby subject to the claims of creditors of the debtor, including that of the Bank.

In particular, Ohio Revised Code Section 1309.11.1 applies so as to make the security interest held by the Bank superior to the unperfected interest held by Wonder Industries. As set forth in that section,

> (B) In the case of a consignment which is not a security interest and in which the requirements of division (A) of this section have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor.

Despite the reference to a security interest in the letter marked Exhibit "A" in the Stipulation of Facts, it has not been shown that Plaintiff had a security interest in the goods in question. Accordingly this section applies.

Subsection (A) of 1309.11.1 requires the consignor who has been required to file a financing statement in accordance with Chapter 1309 of the Revised Code in order to comply with Section 1302.39(C)(3) to also give notice to the holder of a security interest in goods which are the property of the consignee.

Here, it has been stipulated that the Bank has a valid and perfected security interest in "inventory, office equipment, furnishings, fixtures, trade name and trademarks, lease rights, and accounts receivable." In addition to the filing of a financing statement, this section would also require Plaintiff to notify the Bank that it was about to deliver goods to the debtor on consignment. As neither a financing statement was filed nor was the Bank notified

that Plaintiff intended to deliver goods to debtor on consignment, the security interest held by the Bank is superior to the unsecured, contractual rights Wonder Industries held in the goods and the funds resulting from the sale of those goods.

The Trustee, pursuant to 11 U.S.C. 544, was given the right of a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition in bankruptcy. Therefore, Section 544 contains the subsections that are necessary elements for the Trustee to set aside or void transfers of or encumbrances on the debtor's property. 4 Collier on Bankruptcy, 15th ed. § 544.01 at 544–2.

Therefore, the Trustee being a lien creditor and the Plaintiff having failed to perfect its lien as previously discussed, the Trustee's rights are superior to the those of the Bank in the inventory of the debtor at the time of the filing of the proceedings, subject however, to the perfected security interest of Old Phoenix National Bank.

Therefore, it is the conclusion of the Court that the Plaintiff's complaint should be dismissed as the Plaintiff has failed to prove its case that it had superior rights to the funds obtained from the sale of the merchandise delivered to debtor on consignment.