**In re LEBUS–ALBRECHT LUMBER CO., d/b/a Riverside Lumber Co., Debtor.**

**Neil T. GILLUND, U.S. Interim Trustee, Plaintiff,**

v.

**MINOT BUILDERS SUPPLY ASSOCIATION, Defendant.**

**Bankruptcy No. 80–05314.
Adv. No. 82–7308.**

United States Bankruptcy Court,
D. North Dakota.

Jan. 12, 1984.

Jay D. Carlson, Fargo, N.D., for plaintiff.

Phillip D. Armstrong, Minot, N.D., for defendant.

## MEMORANDUM OPINION

WILLIAM A. HILL, Bankruptcy Judge.

The Plaintiff, Interim Trustee, filed a complaint on September 15, 1982, alleging that the transfer by the Debtor, Lebus-Albrecht Lumber Co., d/b/a Riverside Lumber Co. (RIVERSIDE), of certain inventory items back to the Defendant, Minot Builders Supply Association (MINOT) was a preference under section 547 of the Code. It is further alleged that Minot's interest in the inventory, whether by consignment or by security interest, is inferior to the prior perfected security interest of Fargo National Bank & Trust Company (BANK). The Trustee asks for judgment in an amount equal to the value of the inventory wrongfully transferred. The Defendant moved for summary judgment, and the Plaintiff filed a cross-motion for summary judgment. Thereafter, the parties submitted a stipulation of facts and agreed that the matter could be decided upon the facts as stipulated.

## FINDINGS OF FACT

The Court being fully advised in the premises and having considered the pleadings, stipulation and exhibits attached thereto finds the facts as follows: The Debtor, Riverside, was a retail lumber company engaged in the sale of building materials with its business situated near Fargo, North Dakota. The Defendant, Minot, is a cooperative lumber supply association located in Minot, North Dakota. Jerald Albrecht, one of the principals of Riverside, was also a member of the board of directors of Minot.

On December 5, 1978, the Bank filed a financing statement in the Office of the Secretary of State for North Dakota, said statement perfecting the Bank's security in "... all inventory, raw materials, work in process and supplies now or hereafter acquired." The statement was signed by Riverside and the Bank. The Bank later assigned its security interest to the Small Business Administration.

On February 5, 1979, Minot filed a non-standard financing statement in the Office of the Secretary of State for North Dakota. This statement consists of six (6) separate sheets, the first sheet being a standard-form UCC–1. The UCC–1 does not contain any description of collateral nor does it bear the signatures of either party. Attached to it, however, is a five (5) page document entitled "financing statement covering consigned goods". This document states on its face that it "is presented to a filing officer for filing pursuant to the provisions of Chapter 41–09, North Dakota Century Code (Uniform Commercial Code) of the State of North Dakota." Riverside is denoted as the "consignee" and Minot as the "consignor". Both of these parties signed the document in these capacities. Paragraph one of the document states that "this financing statement covers the following types or items of consigned goods" followed by a four (4) page inventory listing. Paragraph 2 states "this financing statement is intended to protect the rights of the consignor, Minot Builders Supply Association". The goods described therein are the same type as covered by the Bank's prior perfected security interest.

According to the President of Minot, this document was intended to create a security interest in the consigned goods. The attorney who drafted the document stated by affidavit that it was executed on January 24, 1979, and that prior to its filing, he gave written notice to the Bank advising it that Minot was furnishing Riverside with certain described goods. The Plaintiff/Trustee, in a review of the Bank's files, states by affidavit that he was unable to find any evidence of a written notice being given by Minot to the Bank. No documentary evidence was offered on this issue. On April 29, 1980, Minot peacefully repossessed building materials from the premises of Riverside having a wholesale value of $38,553.55. On July 31, 1980, an involuntary petition was filed against Riverside for relief under Chapter 7 of the Code. An Order for relief was entered on September 2, 1980.

## ISSUES

Resolution of this matter hinges upon the following issues:

1. Whether Minot properly complied with the North Dakota Century Code (NDCC) provisions respecting perfection of a consignor's interest;

2. Whether that interest is inferior to the rights accorded the Trustee under section 544 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

### 1.

 From the facts of this case, it is clear that Minot intended to perfect its priority in goods delivered under consignment as opposed to perfecting a purchase money security interest in those goods. In order to perfect a consignment, the provisions of NDCC § 41–09–13.1 (UCC 9–114) must be followed. Even if a document would otherwise be deficient as a security agreement, one may still have a priority position if all requisite elements of section 9–114(1) are complied with. This section provides that a person who delivers goods under consignment which is not a security interest and who would be required to file under this chapter by NDCC § 41–02–43(3)(c) (UCC 2–326(3)(c)) has priority over a prior perfected security interest if *all* of the following requirements are met:

(a) complies with the *filing* provisions of UCC 2–326(3)(c);

(b) gives written notification to a holder of a security interest in the same goods before the date of the consignor's filing;

(c) the holder of the security interest receives the notification within five (5) years of consignee's possession;

(d) the notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

Section 9–114 affects the rights of a consignor with respect to conflicting security interests. Section 9–114(2) provides that the failure to follow all of these require-ments operates to render the consignor's interest subordinate to any prior perfected security interest. The failure to comply with all of these provisions does not, however, operate to destroy a consignment which has been otherwise perfected by compliance with UCC 2–326.

As set forth in section 9–114(1)(a), a consignor must comply with the filing provisions of section 2–326(3)(c). This simply provides that unless the filing provisions of Article 9 are followed, any delivery of goods for resale will be deemed a sale or return and will be subject to the claims of the buyers creditors, secured and unsecured alike. This result may be avoided if the consignor has complied with the filing requirements of NDCC § 41–09–41 (UCC 9–402). Compliance with this section was the intent of Minot in drafting and filing the six (6) page document denoted as a "financing statement covering consigned goods" which on its face expresses its purpose to be to meet the requirements of NDCC 41–09.

 A financing statement is sufficient if it gives the names of both parties, is signed by the debtor, and contains a statement describing the types or items of collateral. As before set out, the financing statement filed by Minot was a non-standard document consisting of six (6) pages. While it is true that the front page, being the standard UCC–1 form, bore no signatures or description, the rest of the document does contain signatures as well as a lengthy four (4) page description. All of these pages were stapled together and filed as a single document. The purpose of a financing statement is to provide relevant information to interested parties. The North Dakota Supreme Court in *Benson Cooperative Credit Union v. Central Livestock Association, Inc.*, 300 N.W.2d 236 (N.D.1980) indicated that NDCC § 41–09–41 (UCC 9–402) establishes a system of notice filing. In a case involving the corresponding Minnesota statutory provision, the court of appeals held that a financing statement covers collateral in question if it merely makes it reasonable for a subse-

quent creditor interested in the collateral to make further inquiries. *Thorp Commercial Corp. v. Northgate Industries, Inc.,* 654 F.2d 1245, 1252 (8th Cir.1981). The inquiry then as to the sufficiency of the signature and description is whether a reasonably prudent subsequent creditor would have discovered the nature and extent of the prior security interest. *National Bank of Texas v. West Texas Wholesale Supply Co.,* 714 F.2d 1316 (5th Cir.1983). In view of the rather substantial documentation that was attached to the front UCC–1 form, it is this Court's opinion that the UCC–1 form was for all purposes mere surplusage and not a necessary part of the financing statement. The following five (5) page document entitled "financing statement covering consigned goods" included virtually all information required by 9–402 including both parties' signatures. The document as filed was not deficient in this respect and is sufficient to comply with the provisions of section 2–326(3)(c). Thus, the first element of section 9–114(1) has been met. The effect of compliance with the filing requirement of 2–326 is to perfect the consignor's interest as against the consignee's unsecured and subsequently secured creditors. Whether the consignor's interest is also paramount to prior perfected security interests depends upon compliance with the three remaining requirements of section 9–114(1).

▆▆▆▆ Subsection 1(b) of 9–114 requires that a consignor also give notice to the holder of a prior perfected security interest. The notice required is precisely the same as would be required if the transaction between Minot and Riverside were denoted as a security agreement. The notification required, whether by 9–114 or by NDCC § 41–09–33 (UCC 9–312(3)), is intended to prevent either the consignee or the holder of a purchase money security interest from secretly replacing secured inventory with other goods on consignment or new purchases and thereby undermine the prior secured party's position of priority. *Gerber Industries, Inc. v. Bildisco,* 11 B.R. 1019 (D.C.N.J.1981). The requirement is one of actual notification in writing

which sets forth a fair description of the goods sufficient to alert a prior security interest holder. Failure to provide the notice renders the goods subject to a prior security interest even though a proper financing statement has been filed.

▆▆▆▆ It is the burden of the consignor to prove that he has complied with the requisite elements of 9–114. *In re Chimneys, Chimes 'N Chairs,* 17 B.R. 776 (Bkrtcy.N.D.Ohio 1982). The facts before the Court do not establish that a proper notice sufficient to comply with the foregoing requirement was ever sent to the Bank. The only evidence thereof is a statement by Minot's attorney that it was sent. No letter, document or affidavit of mailing was introduced which might have lent further credibility to Minot's claim of notice. The Court finds that Minot has failed to comply with the requirements of section 9–114(1)(b) and, therefore, its interest in the goods is subordinate to the prior perfected security interest of the Bank. Notice is not, however, a prerequisite to maintaining the consignor's perfected consignment as against unsecured and subsequently secured creditors. That is accomplished by compliance with section 2–326(3)(c) and the filing requirements of section 9–402.

2.

▆▆▆▆ As outlined above, Minot's failure to provide notice to the Bank renders its interest inferior to that of the Bank. We turn now to the issue of whether the Trustee's interest in the property is superior to that of Minot's, thereby giving him the power to avoid the transfer under section 547 of the Bankruptcy Code. Section 547, however, must be considered in conjunction with the strong arm power of section 544. Minot in its answer has alleged that the Trustee has no authority to assert the claim of the Bank or any other secured creditor. The extent of a trustee's power to set aside or avoid transfers is defined by section 544(b) of the Code. By virtue of this section, the trustee has the status of a judicial lien creditor holding an execution

returned unsatisfied as of the date of the filing of the petition. This section affords the trustee no power to act upon the rights of holders of secured claims. *See 4 Collier on Bankruptcy* (15th Edition) ¶ 544.01. As an unsecured creditor, the Trustee must have the right under state law to avoid the transfer to Minot. *In re Fair,* 28 B.R. 160 (Bkrtcy.M.D.Ala.1983). If the Trustee here is to have rights paramount to Minot, such rights would have to be premised upon the unperfected status of Minot's consignment. As an unsecured creditor, the Trustee's rights in consigned goods are defined by section 2–326 rather than section 9–114 which only subordinates the perfected consignment to a prior perfected security interest. If the Trustee is to have standing to avoid the transfer, the consignment by Minot to Riverside must fail to meet all of the elements of section 2–326(3). It did not. As set forth herein, Minot's financing statement was in compliance with section 9–402 and hence with section 2–326(3)(c), the effect of which was to perfect its interest in the goods, such interest becoming paramount to a lien creditor, which includes the Trustee. Therefore, the interest of the Plaintiff/Trustee in the goods as of July 31, 1980, was inferior to the interest of Defendant, Minot.

The Trustee, being inferior to Minot, may not use his section 547 powers to recover the property or its value from Minot, irrespective of whether the elements of section 547 have been met.

Accordingly, IT IS HEREBY ORDERED that the Defendant's, Minot Builders Supply Association, motion for summary judgment is granted, and it may retain the property in question.