### In re MOBILE TRAVELER, INC., Debtor.

### Bankruptcy No. 89–41367–11.

United States Bankruptcy Court,
D. Kansas.

July 12, 1990.

Margaret W. Burgin, Cincinnati, Ohio, Patricia A. Reeder, Topeka, Kan., for Norcold.

Mark A. Stingley, Kansas City, Mo., James R. Hess, Overland Park, Kan., for KDF.

Carol Park Wood, Wichita, Kan., U.S. Trustee.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

This matter is before the court for resolution of a priority dispute which arose in connection with a motion for stay relief or adequate protection. The competing creditors are Norcold, a division of The Stolle Corporation (Norcold), and KDF, a Kansas general partnership. Norcold appears by Margaret W. Burgin and Patricia A. Reeder. KDF appears by Mark G. Stingley and James R. Hess. The court has reviewed the relevant pleadings and is now ready to rule.

## FACTS

The parties stipulated to the following facts. Norcold agreed to ship refrigerators on consignment to debtor, and debtor was to segregate them in its plant until it was ready to install them in recreational vehicles (r.v.'s). Debtor then would "purchase" the refrigerators by removing them from the segregated area, and gave Norcold a security interest in all goods so purchased. Norcold filed a UCC–1 listing its collateral as Norcold refrigerators and all proceeds. Commerce Bank had previously filed a financing statement including the debtor's inventory in its collateral, but Norcold sent no notice of the consignment agreement to Commerce.

Debtor later obtained various loans from KDF, in the process executing two security agreements granting KDF a security interest in, among other things, inventory. KDF filed several financing statments perfecting its security interest.

At the time debtor filed for bankruptcy, it had sixty-six consigned refrigerators segregated in its plant, and had another forty-one it had purchased by moving them from the segregated area. After Norcold filed for stay relief, debtor, Norcold, and KDF agreed debtor would continue to sell the purchased refrigerators but hold in escrow the purchase price of the refrigerators from the proceeds of the sales, and Norcold could repossess the remaining consigned refrigerators for attempted sale but would also hold in escrow the proceeds of any sales. Commerce did not respond to Norcold's motion for stay relief, and by court order has been declared to have no interest in the refrigerators at issue in this matter. Debtor concedes the proceeds from the refrigerators belong to either Norcold or KDF.

## ISSUES

1. Whether Norcold has not perfected its interest in any of the refrigerators because

they were all delivered after it filed its financing statement and that UCC–1 does not identify after-acquired property as collateral?

2. Whether KDF's perfected security interest takes priority under Kan.Stat.Ann. 84–9–114(2) over Norcold's consignor's interest because Norcold failed to notify Commerce under 84–9–114(1)(b), (c) and (d) of its intent to ship goods to debtor on consignment?

### CONCLUSIONS OF LAW

1. After-acquired property

■ KDF's first argument fails because a financing statement need not indicate that it covers after-acquired property. Official UCC Comment 2 to Kan.Stat.Ann. 84–9–402 states in the second paragraph: "[T]he financing statement is valid to cover after-acquired property and future advances under security agreements whether or not mentioned in the financing statement." Official UCC Comment 5 to K.S.A. 84–9–204 states the same rule at the end of its second paragraph. KDF concedes Norcold otherwise has priority to the forty-one purchased refrigerators, so this ruling means Norcold has a prior claim to the proceeds from those refrigerators.

2. Priority of Norcold's consignment interest

■ KDF's argument here, although facially illogical when worded as stated above, is more difficult to reject, although it seems clear it must be rejected. The wording of K.S.A. 84–9–114(2) causes the difficulty. It reads:

"In the case of a consignment which is not a security interest and in which the requirements of the preceding subsection have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor."

This provision appears to mean Norcold's ownership of the consigned refrigerators is inferior to any holder of a perfected security interest no matter when that holder became such if Norcold has failed in any way to satisfy any requirement of 9–114(1). That provision reads:

"A person who delivers goods under a consignment which is not a security interest and who would be required to file under this article by paragraph (3)(c) of section 84–2–326 has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee … if

"(a) the consignor complies with the filing provision of the Article on Sales with respect to consignments (paragraph (3)(c) of section 84–2–326) before the consignee receives possession of the goods; and

"(b) the consignor gives notification in writing to the holder of the security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor; and

"(c) the holder of the security interest receives the notification within five years before the consignee received possession of the goods; and

"(d) the notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

Norcold concedes it gave no such notice to Commerce and that Commerce had filed a financing statement before it. KDF argues Norcold thus failed to satisfy 84–9–114(1), and its consignor's interest is therefore subordinate under 84–9–114(2) to KDF's later-obtained and perfected security interest.

KDF's literal reading of 84–9–114(2) would create a conflict between the two subsections of 84–9–114. Subsection (1) indicates a consignor like Norcold which has filed a financing statement should prevail over two types of secured parties who would have a security interest in the consigned goods if they were the property of the debtor: (1) a secured party that filed a financing statement before Norcold if Norcold provides the notice required by subpar-

agraphs (b), (c), and (d); and (2) a secured party that did not file a financing statement before Norcold. If the statute contained only subsection (1), one would have to resort to negative inferences to determine that Norcold would be subordinate to the first type of secured party if Norcold either had not filed a financing statement or had not given the notice, and to the second type only if Norcold failed to file a financing statement. Perhaps fearing courts would refuse to resort to negative inferences to conclude the owner of the consigned property would have its interest subordinated to a creditor of the consignee, the UCC's drafters apparently wrote subsection (2) in an attempt to declare expressly the negative inferences that might be drawn from subsection (1). Unfortunately, they misstated the inferences and created a rule that conflicts with subsection (1) in Norcold's situation. Under subsection (1), Norcold clearly prevails over KDF because Norcold filed a financing statement as required under subparagraph (a) before KDF filed a financing statement, and so was not required to give the notice described in subparagraphs (b), (c), and (d). The awkwardly worded subsection (2), however, read literally, says that Norcold loses to KDF because it failed to comply with subsection (1) as to Commerce. The court believes this conflict should be resolved by reading subsection (2) as if it read:

"In the case of a consignment which is not a security interest, a person who delivers goods to another is subordinate to a person as to whom the requirements of the preceding subsection have not been met who would have a perfected security interest in the goods if they were the property of the debtor."

This construction agrees with the only case cited to the court which faced this issue and, as intended by the drafters of the UCC, treats a consignor the same as, rather than worse than, the holder of a purchase money security interest in inventory with regard to conflicting security interests.

Norcold cites a case in which the court was presented with the precise question raised here, but either failed to recognize the problem or chose to gloss it over. *In re: Lebus–Albrecht Lumber Co.*, 38 B.R. 58 (Bankr.D.N.D.1984). In that case, the consignor had filed a financing statement but did not give notice to a prior perfected inventory financer, and the bankruptcy trustee sought to set aside the consignor's repossession of consigned inventory as a preference. 38 B.R. *at 60*. In two relevant passages, the court ruled in favor of Norcold's position: (1) "Section 9–114(2) provides that the failure to follow all of these requirements operates to render the consignor's interest subordinate to any *prior* perfected security interest," 38 B.R. *at 61 (emphasis added*); and (2) "Notice is not, however, a prerequisite to maintaining the consignor's perfected consignment as against unsecured and *subsequently* secured creditors. That is accomplished by compliance with section 2–326(3)(c) and the filing requirements of section 9–402," 38 B.R. *at 62 (emphasis added*). The court failed to quote 9–114(2) and offer any explanation why its language supported the emphasized portion of these statements.[1] Nevertheless, the court's ruling gives 84–9–114(2) the meaning this court believes it should have.

In addition, the drafters of the UCC intended to treat a consignor the same as the holder of a purchase money security interest in inventory with regard to conflicting security interests in inventory. Official UCC Comment 1 to K.S.A. 84–9–114 states:

This section requires that where goods are furnished to a merchant under the arrangement known as consignment rather than in a security transaction, the consignor must, in order to protect his position as against an inventory secured party of the consignee, give to that party the same notice and at the same time that he would give to that party if that party had filed first with respect to inventory and if the consignor were furnishing goods under an inventory security agreement instead of under a consignment.

---

**1.** According to the *Uniform Commercial Code Reporting Service, State Correlation Tables*, ND- page 11 (1989), North Dakota's version of 9–114, like Kansas', follows the official UCC version.

*See also Kansas Comment 1983, first paragraph.* This reference indicates a consignment should be treated the same as a purchase money security interest (p.m.s. i.), and K.S.A. 1989 Supp. 84–9–312(5) indicates that a p.m.s.i. holder which has perfected its interest by filing but fails to satisfy 9–312(3) so as to defeat a prior inventory security interest still has priority over later-filed security interests. Applying this result to consignments so that the consignor loses to prior-filed security interests but not later-filed ones also furthers the UCC intent to establish a notice filing system. See K.S.A. 84–9–402, Official UCC Comment 2. In addition, it avoids the anomalous result of finding KDF to have priority over Norcold based on Norcold's failure to notify Commerce even though Norcold's filing gave KDF itself notice.

For these reasons, the court concludes Norcold's interest in the consigned refrigerators is also prior to KDF's security interest. Norcold's claim to the proceeds of all the refrigerators has priority over KDF's claim.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.