NO. 07-04-0489-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 22, 2005
_____

TRI-STATE CHEMICALS, INC., APPELLANT

V.

FIRST STATE BANK, STRATFORD, TEXAS;
B. A. DONELSON; AND DOAK CRABTREE, APPELLEES
_____

FROM THE 69TH DISTRICT COURT OF SHERMAN COUNTY;

NO. 4,316; HONORABLE DAVID GLEASON, JUDGE
_____

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

**OPINION**

Tri-State Chemicals, Inc. (Tri-State) appeals the trial court's grant of summary judgment in favor of First State Bank (Bank). The summary judgment ordered that Tri-State take nothing from Bank on its claims for conversion, conspiracy to convert, assumpsit, money had and received (unjust enrichment), tortious interference with contract and theft, under the Texas Theft Liability Act. Concluding that genuine issues of material fact exist as to all claims asserted by Tri-State, we reverse the judgment of the trial court and remand for further proceedings.

## STANDARD OF REVIEW

A party may prevail on a summary judgment motion by conclusively establishing the absence of any genuine issue of a material fact and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). We review the granting of such a conclusively-established summary judgment using the following standards:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> 2. In determining whether there is a disputed issue of material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true.
>
> 3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A general issue, such as that presented by Tri-State, allows argument as to all possible grounds upon which summary judgment should have been denied. See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970).

## BACKGROUND

As this appeal is a review of a conclusively-established summary judgment, we must take all evidence favorable to Tri-State as true and indulge all reasonable inferences in favor of Tri-State. Nixon, 690 S.W.2d at 548-49. Doing so, we find the evidence shows the following.

2

Tri-State entered into a consignment agreement with Panhandle Agri-Tech, Inc. (Panhandle) on April 24, 1995. By this agreement, Panhandle acknowledged that it did not take title to the consigned goods; that all payments received for sale of the goods, including payments received on accounts, were the absolute property of Tri-State and were to be kept separate from Panhandle's accounts; and that no creditor of Panhandle would have any right to or interest in the goods or the proceeds from the sale of the goods. Further, the agreement expressly provided that the risk of loss, save for loss due to Panhandle's negligence or willful misconduct, would remain with Tri-State.

In late 1995, Panhandle sought a small business loan from Bank. Prior to its approval of the loan, Bank was provided a copy of the consignment agreement between Tri-State and Panhandle and even participated in negotiations regarding the terms of this consignment agreement. As collateral for the loan, Bank took a security interest, which it perfected by filing with the Secretary of State, in all of Panhandle's inventory, equipment, accounts or contract rights, and cash or non-cash proceeds thereof. Six days after Bank filed its security agreement, Tri-State filed a financing statement with the Secretary of State covering its consigned goods. However, Tri-State's financing statement did not specifically address proceeds from the sale of the consigned goods.

In 1997, Panhandle, experiencing severe financial difficulties, began commingling payments made on accounts created by the sale of Tri-State's consigned goods with its own resources. Although in dire financial circumstances, of which Bank was aware, Panhandle paid off the loan. Tri-State contends that the loan payments, at least to some

3

extent, came from payments made on open accounts owned by Tri-State. Thus, Tri-State seeks to recoup these proceeds, which were wrongfully appropriated by Panhandle.

Tri-State filed suit against Bank alleging conversion, conspiracy to convert, assumpsit, money had and received (unjust enrichment), tortious interference with contract and theft, under the Texas Theft Liability Act. Bank filed a Motion for Summary Judgment which was granted by the trial court, but reversed and remanded by this Court for procedural defects. See Tri-State Chems., Inc. v. First State Bank, No. 07-00-0180-CV, 2001 Tex.App. LEXIS 787, at *20-*21 (Tex.App.–Amarillo February 6, 2001, no pet.).

Upon remand, Bank filed an Amended Motion for Summary Judgment by which Bank contended that it was entitled to summary judgment on the conversion, conspiracy to convert, assumpsit, money had and received, and theft claims because the summary judgment evidence conclusively established that, as a matter of law, Tri-State could not prove that it had a superior right to or owned the money that it claimed. Bank further contended, by its motion, that the summary judgment evidence conclusively established, as a matter of law, that Bank had exercised a superior or equal right to the subject matter of the contract, which is an affirmative defense to a tortious interference with contract claim. The trial court again granted summary judgment in favor of Bank.

Tri-State appeals contending that the trial court erred in granting summary judgment in favor of Bank. Within this general issue, Tri-State argues, *inter alia*, that Bank's actual knowledge of the consignment between Tri-State and Panhandle prohibited transference

4

of title to Panhandle, see TEX. BUS. & COMM. CODE ANN. § 2.326(c)(2) (Vernon 1968),[1] that Bank's actual knowledge of the consignment makes Texas Business and Commercial Code section 9.114 inapplicable, see TEX. BUS. & COMM. CODE ANN. § 9.114 (Vernon 1994).[2] In its response, Bank contends that this appeal, at its essence, presents a question of who, as between a consignor and a creditor of the consignee, has priority to proceeds generated through collection of open accounts or accounts receivable resulting from the sale of consigned goods. As all grounds for summary judgment asserted by Bank were based on having superior or equal rights to the proceeds from the open accounts, a determination of whether, based on the summary judgment evidence, Bank had superior or equal rights to these proceeds as a matter of law will determine whether Bank was entitled to summary judgment.

## DISCUSSION

As a general proposition, we note that the owner of personalty wrongfully taken from him may recoup it, or the proceeds or mutations thereof, from the possession of one who took it or his transferee. Tri-State Chems., Inc. v. W. Organics, Inc., 83 S.W.3d 189, 195-96 (Tex.App.–Amarillo 2002, pet. denied). This is true even if the possessor is a good faith

---

[1]Acts 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2377, amended by Acts 1999, 76th Leg., R.S., ch. 414, § 2.16, 1999 Tex. Gen. Laws 2739, 2739. As the 1999 amendments to section 2.326 are not applicable to this case, all further references to "section 2.326" or "§ 2.326" will be references to the pre-amendment provision.

[2]Acts 1973, 63rd Leg., R.S., ch. 400, § 5, 1973 Tex. Gen. Laws 997, 1006, repealed by Acts 1999, 76th Leg., R.S., ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639, 2658. As the events giving rise to this case occurred prior to the 1999 repeal of section 9.114, all further references to this provision will be by reference to "section 9.114" or "§ 9.114."

purchaser for value. Id. at 199. To recoup the property, the claimant need only trace his property into the asset he seeks. Id. at 196. Thus, if Tri-State owned the proceeds paid to Bank in satisfaction of Panhandle's loan, Tri-State is entitled to recoup those proceeds to the extent that it can trace the proceeds back to the property that it owned.

Under section 2.326, goods delivered to another primarily for resale are considered "sale or return" goods and are subject to claims of the "buyer's" creditors unless one of four exceptions apply.[3] Tri-State contends that the summary judgment evidence established that the consignment was not a sale or return because Bank had actual knowledge that Panhandle was "substantially engaged in the selling of the goods of others." See § 2.326(c)(2). In its motion, Bank contended that the undisputed evidence established that the section 2.326(c) exceptions did not apply and, therefore, the "consignment" was a deemed sale or return.[4] Thus, the dispute presented to the trial court turned on whether Bank established, as a matter of law, that the "consignment" was actually a sale or return

---

[3]The exceptions, as applicable to this case, are found in section 2.326(c), which provides, "Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return . . . . However, this subsection is not applicable if the person making delivery
    (2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or
    (3) complies with the filing provisions of the chapter on Secured Transactions (Chapter 9)."

[4]On appeal, Bank takes the position that the consignment was not deemed a sale or return by section 2.326 because Tri-State filed a financing statement. See § 2.326(c)(3). However, this argument does not comport with the argument presented to the trial court in Bank's motion. To preserve an issue for appellate review, all theories in support of or opposition to a motion for summary judgment must be presented to the trial court in writing. See Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). Therefore, we will limit our review to a determination of whether the arrangement between Tri-State and Panhandle would constitute a deemed sale or return under section 2.326.

or whether the summary judgment evidence presented a genuine issue of material fact as to whether the "general knowledge" exception of section 2.326(c)(2) applied.

Taking the evidence favorable to Tri-State as true and indulging all reasonable inferences from the evidence in favor of Tri-State, we conclude that a genuine issue of material fact exists as to whether Bank had *actual* knowledge that Panhandle was substantially engaged in selling the goods of others. However, the section 2.326(c)(2) exception applies when the "consignee's" creditors *generally* know that their debtor is substantially engaged in selling the goods of others. Bank contends that its actual knowledge is irrelevant to a determination of what Panhandle's creditors generally knew.

The purpose of inclusion of the knowledge-based exceptions to section 2.326 was to permit creditors to deal with a debtor "upon the assumption that all property in his possession is unencumbered, unless the contrary is indicated *by their own knowledge or by public records*." Bufkor, Inc. v. Star Jewelry Co., 552 S.W.2d 522, 523-24 (Tex.Civ.App.–Beaumont 1977, writ ref'd n.r.e.) (emphasis added). In furtherance of this purpose, we hold that the exception contained in section 2.326(c)(2) is met, as to a particular creditor, by proof that the creditor had actual knowledge, prior to its extension of credit, that the debtor was substantially engaged in selling the goods of others. Therefore, the genuine issue of material fact that exists as to whether Bank had actual knowledge of the consignment agreement between Tri-State and Panhandle prior to its extension of credit to Panhandle precludes a finding that, as a matter of law, the goods were delivered

7

on sale or return. As a result, we conclude that the trial court erred in granting Bank's motion for summary judgment.

Additionally, Bank argued that it had priority to payments made on accounts created by the sale of Tri-State's consigned goods under section 9.114.[5] However, the express language of section 9.114 indicates that its application is limited to, "A person who delivers goods under a consignment which is not a security interest *and who would be required to file under this chapter by Subsection (c)(3) of Section 2.326 . . . .*" (emphasis added). A consignor that can establish that its consignment met one of the section 2.326(c) exceptions other than the filing exception contained in (c)(3) is not required to file a financing statement to protect its ownership interest in the consigned goods. See In re Alper-Richman Furs, Ltd., 147 B.R. 140, 149 (Bankr. N.D. Ill. 1992).[6] Thus, as we have previously determined that a genuine issue of material fact exists regarding whether Tri-State met the section 2.326(c)(2) exception, we cannot determine whether section 9.114 has any application to Tri-State's claims.

---

[5]We note that section 9.114 is inapplicable to a "consignment" that is deemed a sale or return by section 2.326. However, we will construe Bank's argument under section 9.114 as being made in the alternative.

[6]"[A]s against the consignee's creditors, the consignor who fails to file a financing statement has priority to the consigned goods if [another] of the § 2-326(3) exceptions applies; otherwise, § 9-114 applies, and the consignee's secured creditors have priority. This view is in accord with the Uniform Commercial Code's mandate against reading its provisions to render other provisions meaningless. See § 1-104. The majority of courts considering the issue have also adopted this view. See, e.g., In re State Street Auto Sales, 81 B.R. 215, 217-18 [(Bankr.D.Mass. 1988)] (§ 9-114 should be limited to situations where the other exceptions to § 2-326(3) do not apply, noting that 'most courts and commentators' have so held); Matter of Great American Veal, Inc., 59 B.R. 27, 32 (Bankr.D.N.J.1985) (§ 9-114 does not apply where other exceptions to § 2-326(3) do); In re Lebus-Albrecht Lumber Co., 38 B.R. 58, 61 (Bankr.D.N.D.1984) (same)."

CONCLUSION

Having found that a genuine issue of material fact exists as to whether Panhandle's creditors generally knew that Panhandle was substantially engaged in selling the goods of others, we reverse the summary judgment and remand the cause for further proceedings.


Mackey K. Hancock
Justice

9